

September 12, 2018

**V**IA **ECF**

The Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**525 W. Monroe Street**
**Chicago, IL  60661-3693**
312.902.5200 tel
www.kattenlaw.com

**JONATHAN L. MARKS**
jonathan.marks@kattenlaw.com
312.902.5337 direct
312.577.4518 fax

Re:   *SFMA v. 21st Century Pharmacy, Inc., et al.*, Case No. 17-cv-5845
         Response to Motion to Quash

Dear Judge Scanlon:

In a remarkable change in position, three nonparties, Anturio Marketing, Inc. ("Anturio"), P&K Marketing Services, Inc. ("P&K"), and NY Collection Services, Inc. ("NY Collection") believed to be owned and/or controlled by nonparty Peter Khaim (collectively the "Khaim Entities"),[1] have not only responded to plaintiff State Farm Mutual Automobile Insurance Company's ("SFMA") motion compel compliance with subpoenas ("Motion"), but have moved to quash them.  The actions of the Khaim Entities are striking because they previously responded to the subpoenas, produced a small handful of documents, and claimed they had nothing else.  SFMA moved to compel because the claim that the Khaim Entities did not have anything else was not credible.  The Khaim Entities now not only concede that they have documents (confirming that SFMA's suspicions were correct and the Khaim Entities' prior claims false), but have reversed their professed intent to cooperate with the subpoenas and now seek to quash them.  Such gamesmenship must be rejected.  The Khaim Entities long ago waived any basis they had for objecting to the subpoenas and even if they had not, the subpoenas seek relevant information from critical participants in the conduct at issue.

***Relevant Background***.  As detailed at length in SFMA's Motion, discovery has revealed that Khaim and his entities are central components of 21st Century Pharmacy, Inc.'s ("21st Century") scheme to provide medically unnecessary compounded products based on prescriptions obtained from physicians through improper financial arrangements.  Khaim appears to own and/or control 21st Century, or at the very least have a financial interest in it, and be involved in its operations.  *See* Dkt. 57 at 1910.  To date, SFMA has uncovered significant payments from 21st Century to ten

---

[1] Khaim owns Anturio and P&K on paper.  As set forth in SFMA's Motion, the paper owner of NY Collection is Oksana Poltilova.  She has been described by 21st Century as a former 21st Century "manager" and has received payments from Express Billing & Collection, Inc. ("Express Billing"), 21st Century's biller that is owned by Alishayev's wife, Iris Itskhakov.  In addition to her connections to 21st Century, Poltilova also appears to be married to or have a familial relationship with Khaim, who appears to exert control over the companies she purports to own, including NY Collection.  For example, NY Collection is located at a residential address that Khaim purportedly sold to Poltilova in 2014 and at which Khaim and Politilova reside.  Khaim and Poltilova also created the Khaim Family Irrevocable Living Trust that describes the children they have together.  In addition, Poltilova owns a company, Oksa Occupational Therapist PC ("Oksa Occupational"), that has a significant financial relationship with Anturio (Khaim's company).  Bank records show significant transfers of money between the two companies.  Moreover, Anturio even made a tax payment to the New York City Department of Finance on behalf of Oksa Occupational.

AUSTIN    CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    HOUSTON    IRVING    LOS ANGELES
NEW YORK    ORANGE COUNTY    SAN FRANCISCO BAY AREA    SHANGHAI    WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations



September 12, 2018
Page 2

Khaim-controlled entities, including over $415,000 paid to the Khaim Entities subject of the Motion, $100,000 purportedly loaned by Anturio to 21st Century, Khaim's purported provision of the capital necessary to start 21st Century, and Anturio's purported "leases" of equipment to 21st Century. At the same time, Khaim provided expertise as a "consultant" because Alishayev had no prior pharmacy experience, and e-mails reflect Khaim playing a role in the day-to-day operations of the company. Khaim also appears to have a role in securing prescriptions for compounded products. Khaim owned many of the "marketers" and "consultants" who received significant payments from 21st Century. He also appears to control clinics through which prescriptions were obtained. For example, as detailed in SFMA's Motion, Khaim may control multiple clinics owned by defendant Dr. Azu Ajudua, including Starrett City Medical PC ("Starrett City") and Hollis Novel Comprehensive Medical PC ("Hollis Novel"). *Id.* Since SFMA filed its Motion, it has uncovered additional financial evidence linking Khaim to other prescribing doctors, including defendant doctors Jo-Ann Shakarjian and Vincentiu Popa. For example, NJ Pain Treatment PC, which made payments to Dr. Shakarjian, leased space from Dr. Ajudua at Starrett City and Hollis Novel, and made payments to Anturio. Dr. Popa worked for a company called Metro Pain Specialists PC, which leased office space from Dr. Ajudua at his Starrett City and Hollis Novel locations, which have financial relationships with Khaim. Additionally, there is evidence that Khaim controlled other pharmacies associated with 21st Century such as Sutter Pharmacy and potentially as many as 14 other pharmacies.

Given the significance of Khaim and his entities, including significant payments from 21st Century to the Khaim Entities, SFMA issued document subpoenas. The subpoenas sought a number of categories of documents and were served on March 29, 2018 (Anturio and P&K) and May 3, 2018 (NY Collection). *See* Exs. A–F. In response, on May 4, 2018 (Anturio and P&K) and June 13, 2018 (NY Collection), the Khaim Entities provided responses addressing each category and stating that they either were providing documents or did not have documents. *See* Exs. G–I. Anturio and NY Collection produced a handful of invoices and one loan agreement and P&K produced no documents. *See* Exs. J–K. The Khaim Entities did not seek to quash the subpoenas and did not claim that they were withholding any documents based on any objection. *See* Exs. G–I. SFMA did not consider the claims credible and pressed the Khaim Entities. Anturio and P&K subsequently agreed to produce authorizations for SFMA to obtain their tax returns, bank records, and other financial records.[2] *See* Ex. L–M. Months later, after SFMA had sent several follow-up requests, they refused to produce the promised authorizations. Pressed further, the Khaim Entities insisted that they had produced all responsive documents. On August 2, 2018, in response to an email from SFMA, their counsel wrote that the Khaim Entities "refused to provide anything more than the subpoenas requested. As for the subpoenas, my clients gave you everything they had." Ex. N. SFMA concluded that the Khaim Entities' claim to have no documents was not credible and filed the present Motion. The Motion was based on the assumption that the Khaim Entities were insisting they did not have any more documents and their representation that they were not withholding any documents based on any objection.

On September 7, 2018, the Khaim Entities filed their response to SFMA's Motion and moved to

---

[2] Despite several requests by SFMA, counsel for NY Collection (who also represents Anturio and P&K) never made himself available for a meet and confer regarding NY Collection's responses and production. *See* Dkt. 57 at 1909 n.2.



September 12, 2018
Page 3

quash. The filing appears to concede, as SFMA suspected, that they do have responsive documents and are withholding them.

*Analysis*. The Khaim Entities' motion to quash should be denied, and they should be ordered to produce all responsive documents because (a) they have waived any objections to the subpoenas and, (b) even if they have not, the records are relevant and discoverable.

First, the Khaim Entities have waived any ability to object to or quash the subpoenas. Several months ago, they swore under oath that they had produced all responsive documents in their possession, custody, or control. They did not move to quash and did not claim to be withholding any documents based on any objection. Only after SFMA filed the Motion in which it demonstrated why their claim to have nothing could not possibly be true did the Khaim Entities seek to block the request. A failure to timely move to quash a subpoena waives the right to do so. *See Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*, 2016 WL 3080807, at *7 (E.D.N.Y. May 27, 2016) (because nonparty "did not raise any timely objections to . . . [the s]ubpoena, or timely move to quash it, he waived his right to object to the . . . [s]ubpoena"). And although the responses the Khaim Entities served on May 4, 2018 and June 13, 2018, contain boilerplate objections, they made clear that they were not standing on those objections or withholding any documents based on them. Their September 7, 2018 response — filed over five months after the subpoenas were served on Anturio and P&K and over four months after the subpoena was served on NY Collection, between three and four months after their initial responses to the subpoenas, and four months after SFMA pointed out that their initial responses to the subpoenas were not credible — is simply too late. *Cf. Allen v. Colgate-Palmolive Co.*, 1985 WL 191, *2 (S.D.N.Y. Jan. 14, 1985) (holding that defendant "waived its right to object to plaintiff's [document] request and cannot now be heard to say it may withhold production of this document" where defendant "never made any timely objection to [the] discovery request; on the contrary, it specifically responded that it would produce all relevant documents as requested"). Their obstruction and gamesmanship have cost SFMA considerable time and resources and wasted this Court's time. They should not be able to benefit from their tactics.

Second, even if the Court determines the Khaim Entities have not waived their objections, the subpoenas seek highly relevant, proportional information. Discovery has established the important role that Khaim and the Khaim Entities play in the conduct at issue. Information concerning these entities is important to understand who owns and controls 21st Century, how prescriptions for medically unnecessary compounded products were obtained, whether other pharmacies were involved, the flow of money among the many entities used to facilitate the scheme, and the relationships between the participants. Significantly, the Khaim Entities received substantial payments from 21st Century and no one has produced or is willing to produce anything that reflects what they did for such payments.

The Khaim Entities' arguments to the contrary are unavailing. They argue that the information is irrelevant because the complaint does not mention kickbacks or the use of third parties to funnel money from 21st Century. Dkt. 70 at 2372–73. But the complaint does describe the likelihood of improper financial arrangements between 21st Century and the prescribing doctors. Dkt. 1 ¶¶ 31, 69. In addition, the complaint describes Khaim as an associate of 21st Century's owner and



September 12, 2018
Page 4

states that Anturio may have a role in the scheme. *Id.* ¶ 13. The fact that SFMA only learned about the scope of the roles played by Khaim and his entities after filing the complaint through discovery does not make their activity any less relevant. *See, e.g.*, *Santos v. Knitgoods Workers' Union, Local 155*, 1999 WL 397500, at *4 (S.D.N.Y. June 15, 1999) (noting that plaintiff was entitled to discovery on issue that was not specifically alleged in complaint because there was circumstantial evidence to support it).

Similarly, any claim that such discovery is irrelevant because the case is exclusively about the medical necessity of compounded products is without merit. If prescriptions were obtained through improper financial arrangements it would bear on medical necessity — *i.e.*, that the medicines were prescribed not because they were necessary but because of an improper payment. Moreover, if the compounded products were provided as a result of kickbacks they would not be reimbursable, and any claim to the contrary would be a fraudulent misstatement supporting SFMA's fraud claim. Moreover, the required records directly impact the issue of who owns and controls 21st Century and who is responsible for its conduct.

Additionally, there is more than enough support to require the production of tax returns. The returns are critical because they will identify reported sources of income, the reported amounts of such income, the identities of persons and entities with which they are affiliated, and any reported deductions. This information will reveal the entities they own and control and in which they have an interest and the extent of those interests, as well as sums that may have been expended to advance the scheme. Given the absence of any other records reflecting what they claim to have done, the tax returns, along with other financial records, are critical sources of information. *Cf. SFMA v. Pointe Physical Therapy, LLC*, 2017 WL 5176403, at *2 (E.D. Mich. Nov. 3, 2017) (ordering production of nonparty tax returns and ledgers); *see also SFMA v. CPT Med. Servs., Inc.*, 2006 WL 2460641, at *1–2 (E.D.N.Y. Aug. 23, 2006); *SFMA v. Tabakman*, 2008 WL 4527731, at *2 (E.D.N.Y. Oct. 3, 2008) (denying motion to quash bank subpoenas, concluding that "[w]hat [SFMA] seek[s], evidence of payments among and between parties which permits an inference that a kickback has occurred, is relevant" and discoverable); *SFMA v. Warren Chiropractic & Rehab Clinic, PC*, 315 F.R.D. 220, 223 (E.D. Mich. 2016) (where there are "intermediaries . . . designed to conceal [the] identity of those paying, or being paid by, Defendants[,]" a plaintiff is entitled to discovery designed to "cross-reference payments made or received by those helping to further Defendants' scheme").

Relevant as well should be the extent to which the Khaim Entities and others have gone to hide the conduct at issue. Such efforts have included the use of numerous entities to move money and make payments, the structuring of 21st Century to hide interested parties, the use of Express Billing to conduct activity, the absence of any records reflecting what entities did in exchange for significant payments, and more recently the conduct of the Khaim Entities in connection with the subpoenas. *Id.*

For all of these reasons, the Court should deny the motion to quash and grant SFMA's Motion.

Katten
Katten Muchin Rosenman LLP

September 12, 2018
Page 5

Respectfully submitted,

*/s/ Jonathan L. Marks*

Jonathan L. Marks