# Katten
#### Katten Muchin Rosenman LLP

November 15, 2018

**525 W. Monroe Street**
**Chicago, IL  60661-3693**
**312.902.5200 tel**
**www.kattenlaw.com**

**VIA ECF**

The Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**JONATHAN L. MARKS**
jonathan.marks@kattenlaw.com
312.902.5337 direct
312.577.4518 fax

Re:   *State Farm Mut. Auto. Ins. Co. v. 21st Century Pharmacy, Inc., et al.*,
         17-cv-5845-MKB-VMS – Response to Ltr. re Order to Show Cause (Dkt. 107)

Dear Judge Scanlon:

More than four months after being served with subpoenas *duces tecum* and two months after first being ordered to show cause why they should not be held in contempt, non-parties New Business Funding Inc. ("NBFI"), TBM Solution Inc. ("TBM"), and TAR Group Inc. ("TAR") (together, the "Defaulting Parties") have come forward after the Court issued its second order directing them to show cause.  The Defaulting Parties now contend they were reasonably diligent in complying with the Court's orders because their owner, Tariel Begiyev, "mistakenly believed that [they] were represented by counsel in this matter."  Dkt. 107 at 4826.

The claim that they have been diligent is not credible.  Among other things, the Defaulting Parties' assertion that they took reasonable action to retain counsel at the time of service is dubious, they are completely silent as to why they ignored letters and a motion advising them of their failures and an earlier court order, and they do not attempt to justify why, even after they admitted knowing about their failures more than three weeks ago, they have still done nothing whatsoever to comply.  The integrity of this Court's orders is at issue.  At this point, SFMA is prepared to allow the Defaulting Parties until December 7, 2018,[1] but they should not be permitted to assert any objection to any request because they are only responding after being ordered to show cause why they should not be held in contempt.

On July 12, 2018, SFMA served subpoenas *duces tecum* on the Defaulting Parties, which detail more than 20 categories of records.  Dkt. 84-5 at 3805–07, 3812; Dkt. 84-8 at 3918–21, 3926; Dkt. 84-9 at 3955–58, 3963.  According to the affidavit of Tariel Begiyev, the Defaulting Parties received and were aware of the subpoenas.  The Defaulting Parties did not attempt to respond to the subpoena, file any motion, or contact SFMA.  Accordingly, SFMA sent a follow-up letter to each Defaulting Party on July 27, 2018 requesting compliance by August 6, 2018.  Dkt. 84-5 at 3814; Dkt. 84-8 at 3928; Dkt. 84-9 at 3965.  Still having received no response, on September 13, 2018, SFMA filed a motion to compel, which it also sent to each Defaulting Party.  Dkt. Nos. 84,

---

[1] The Defaulting Parties' assertion that SFMA objected to their requested extension is incorrect.  SFMA has no objection to the late filing of their letter on November 14, 2018.  It also would not object to the production of records on December 7, 2018, provided the Defaulting Parties do not assert objections.

85. On September 14, 2018, this Court entered an order (the "September Order"), which SFMA subsequently served on each Defaulting Party, providing, among other things:

> The non-parties named in the motion to compel at [84, 85] are ordered to show cause as to why they should not be held in contempt for failing to respond to the [plaintiff's] subpoena for records in this action. The Court will hold a hearing on 10/23/18 at 2:30 pm in Courtroom 13A . . . . The nonparties or their attorneys must appear in person. The nonparties may submit a written objection or response to the Order to Show Cause by 10/9/18. . . In addition to the possibility of arrest, other penalties [for noncompliance] may include sanctions, monetary penalties or other orders.

Dkt. 88 at 4479–80. The Defaulting Parties did not appear as required on October 23. Following that hearing, the Court entered a second order directing each Defaulting Party to submit a response by November 9 and to appear for a hearing on November 16 (the "October Order"). Through counsel, NBFI first contacted SFMA on November 9, and TBM and TAR on November 14, each requesting an extension to comply with the subpoenas. To date, none has produced a single responsive document and, although they indicate an intention to object to requests, they have not indicated which requests will be answered and which objected to. Dkt. 107 at 4828.

Because the Defaulting Parties intend to assert objections for the first time in response to an order to show cause, they should be barred from doing so. *See Carey v. Air Cargo Assocs., Inc.*, 2011 WL 446654, at *3 (S.D.N.Y. Feb. 7, 2011) (barring subpoena objections where, "[r]ather than filing a motion to quash, [the subpoena recipient] chose to ignore the subpoena entirely, and raised its objections to the [subpoena] only after being ordered to show cause why it should not be held in contempt"); *Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*, 2016 WL 3080807, at *6–7 (E.D.N.Y. May 27, 2016) (refusing to consider untimely objections raised in motion to quash because recipient "neither made an attempt to properly object to the [subpoena], nor sought an extension of time to do so.").

This is particularly so here because the Defaulting Parties' bases for failing to comply with the subpoenas and orders lacks any credibility. Begiyev does not contest that the Defaulting Parties received the subpoenas in July 2018. Dkt. 107 ¶ 3. Rather, he claims that he "conferred with the owners of some . . . other companies [who also received SFMA subpoenas] regarding finding legal representation to assist with responding to the subpoenas," and "[w]e agreed to send the subpoenas and request for representation to the [Gary Tsirelman] Firm all in one package or packet," but "it appears that the [Defaulting Parties'] subpoenas was [sic] not included in the package or packet." *Id.* ¶¶ 5, 8, 9. Even accepting these uncorroborated assertions,[2] it amounts to a claim that having received a subpoena, Begiyev talked to unidentified others, passed off responsibility to them to retain counsel and respond, and assumed it had been handled. He offers no explanation for why he believed "the [Tsirelman] Firm was handling" the subpoenas when, over the next four months, no one asked him for a document, what his companies might have that might be responsive, whether he wanted to object to any request, or how he wanted to

---

[2] The affidavit does not identify who Begiyev conferred with or the specific date on which these discussions took place. It does not offer any evidence of the purported "package" that would presumably exist, who sent it, when it was sent, or to whom it was sent.

respond. Further, neither the affidavit nor the written response identifies who, other than Begiyev, would have had authority to retain counsel on behalf of the Defaulting Parties, particularly given Begiyev's statement that he is the "sole owner" of each. Dkt. 107-1 at ¶ 1. Indeed, the affidavit says nothing about why he never had a conversation with a lawyer until two court orders threatened him with contempt.[3] Moreover, neither the affidavit nor the response address why they ignored letters, a motion and an earlier court order or why they have failed to comply in the 3 weeks since they admitted they knew of the order and their obligation. Such conduct does not constitute "reasonable diligence." *See, e.g.*, *Leser v. U.S. Bank Nat'l.Ass'n*, 2011 WL 1004708, at *6 (E.D.N.Y. Mar. 18, 2011) (holding in contempt non-party subpoena recipient who repeatedly ignored court orders and failed to appear for a deposition due to "errors in judgment based on other unrelated events occurring in his personal life"); *In re Dunne*, 2018 WL 4654698, at *7 (D. Conn. Sept. 27, 2018) (holding in contempt non-party subpoena recipient despite producing 1,500 pages of documents).

Notwithstanding the questionable gaps in the Defaulting Parties' explanation, even if they had timely objected, any such objections would be without merit. The scope of discovery from parties and non-parties is broadly defined to include any "matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b); *see Johnson v. City of New York*, 2018 WL 276349, at *2 (E.D.N.Y. Jan. 3, 2018) ("the purpose of discovery can include fact finding and information gathering, even if the information is not immediately related to the underlying claim."). "Relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably *could lead* to other matter that could bear on any party's claim or defense." *SFMA v. Fayda*, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quotation omitted).

The information SFMA seeks from each Defaulting Party, which includes bank, tax, and employment records, is relevant to the claims alleged in the complaint because it bears on (1) who actually controls defendants' activities, and thus who is responsible for the alleged fraudulent conduct, and (2) whether the Defaulting Parties are a conduit for funneling kickback payments from Alishayev and Khaim to prescribing doctors.

First, the issue of who owns and controls defendants and who is responsible for the conduct at issue is always relevant to the claims at issue. *See Universal Acupuncture Pain Servs., PC v. SFMA*, 2002 WL 31309232, at *5 (S.D.N.Y. Oct. 15, 2002) (ordering production of nonparty bank and tax records because such information may support the "argument that [the nonparty] was merely a vehicle for [one of the defendants] to control [the defendant clinic]"); *SFMA v. Pointe Physical Therapy, LLC*, 2017 WL 5176403, at *2 (E.D. Mich. Nov. 3, 2017) (similar).

---

[3] The affidavit also gives the false impression that Begiyev had no direct contact with counsel regarding the subpoenas until November 2018. After numerous unsuccessful attempts to personally serve TBM and TAR, on or around June 19, SFMA's process server contacted Begiyev by telephone and provided contact information so that Begiyev could provide it to his attorney. After receiving no communication, on June 26, SFMA contacted Gary Tsirelman and requested whether, based on his representation of TBM and TAR with regard to subpoenas served by Allstate Insurance Co. in a separate litigation with 21st Century, he would accept service on their behalf. Mr. Tsirelman advised as follows: "I am sorry but I am not authorized to accept service on their behalf." Contrary to the affidavit's characterization, Mr. Tsirelman's response suggests Begiyev, as early as June 26, (1) communicated with Mr. Tsirelman regarding efforts to evade service of the subpoenas and (2) had full awareness of the subpoenas and his obligations thereunder.

Here, compelling evidence suggests that the Defaulting Parties' and their owner, Tariel Begiyev, may have an ownership interest in 21st Century Pharmacy Inc. ("21st Century") and are directly involved in the fraud scheme alleged in the complaint. NBFI purportedly loaned 21st Century a little more than $500,000, but received in exchange at least $1.494 million in payments in less than 14 months, including two separate payments for $500,000 on January 23 and March 1, 2017. To date, 21st Century has produced no loan documents supporting the payments it made to NBFI or that explain the discrepancy between the loan amount identified by 21st Century and the payments made by 21st Century to NBFI. Moreover, 21st Century paid about $350,000 to TBM and TAR. Discovery has shown that numerous other entities controlled by Alishayev and to which 21st Century paid substantial sums also made significant payments to the Defaulting Parties, including Express Billing & Collection Inc. (owned by Alishayev's wife) and Personal Tech Inc. (owned by Alishayev's father). Finally, Begiyev's business operations are closely linked with those of Peter Khaim. Begiyev and Khaim owned property together, operated businesses at the same location, and paid to and received significant sums of money from one another's various entities.[4] Begiyev also owned and operated numerous pharmacies that paid to and received significant sums from entities owned or controlled by Alishayev and/or Khaim, including 21st Century. The nearly $1.85 million that 21st Century paid to the Defaulting Parties for services entirely unknown and undocumented (other than check drafts) raises serious questions as to their role in the fraud.

Second, if the Defaulting Parties brokered or otherwise facilitated kickbacks or improper financial relationships between 21st Century and the doctors prescribing 21st Century compounded products, it would directly support the complaint's specific allegations and claims for fraud and unjust enrichment against named defendants. As noted in prior briefing (Dkt. __), the complaint alleges that 21st Century submitted bills to SFMA stating that the compounds were (a) *medically necessary* and (b) *reimbursable*, when they were not. Compl. ¶¶ 5–8, 84, 91, 95, 103–04, 109, 113, 121–22, 127, 131, 139–40, 149, 157, 158, 163. The complaint also alleges that non-party marketers and consultants participated in the alleged fraud scheme. *Id.* ¶ 68.

Responsive records in the Defaulting Parties' possession tending to show that 21st Century entered into improper financial arrangements with prescribing doctors are plainly relevant to whether doctors prescribed the compounds because they were medically necessary or as a result of improper payments. *See, e.g.*, *SFMA v. Stavropolskiy*, 2017 WL 1493032, at *5 (E.D. Pa. Apr. 26, 2017) (ordering individual and corporate defendants "to produce their corporate and financial records," because SFMA did "allege[] that [defendants] implemented a scheme to defraud [SFMA] for the personal financial benefit of" two individual defendants); Dkt. 98-4 at 4663 (*Metro Medic Transp., Inc. v. SFMA*, 13-mc-50799 (E.D. Mich. Aug. 13, 2013)) (similar); *SFMA v. Tabakman*, 2008 WL 4527731, at *2 (E.D.N.Y. Oct. 3, 2008) (similar).

Accordingly, SFMA respectfully requests that the Court order each Defaulting Party to produce all documents responsive to the subpoenas in their possession and control by December 7, 2018.

---

[4] Khaim's central role in the fraud scheme has been discussed at length in both briefing and during oral argument. *See, e.g.*, Dkt. Nos. 57, 58, 73, 76. Most recently, defendants 21st Century and Albert Alishayev have claimed Khaim is a *de facto* employee of 21st Century and have asserted the attorney-client privilege over communications among 21st Century, its counsel, and Khaim. *See* Dkt. 105 at 4764.

Respectfully submitted,

*/s/ Jonathan L. Marks*

Jonathan L. Marks