UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
STATE FARM MUTUAL AUTOMOBILE     :
INSURANCE COMPANY,     :
     :
          Plaintiff,     :         **MEMORANDUM & ORDER**
     :
          -against-     :         17 Civ. 5845 (MKB) (VMS)
     :
21ST CENTURY PHARMACY, INC., ET AL.,     :
     :
          Defendants.     :
---------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Presently before the Court are four motions to compel the production of documents filed

by Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff" or "State Farm").

One of the pending motions seeks records from Defendants, ECF No. 73, while the remaining

three motions seek records from non-parties, ECF Nos. 44, 57 & 84.  Each motion is addressed

below.

## I.    BACKGROUND

The Complaint in this action alleges claims of common law fraud, unjust enrichment and

aiding and abetting against 21st Century Pharmacy, Inc. ("21st Century"); its owner, Albert

Alishayev; and four medical doctors, Timothy Morley, D.O., Azu Ajudua, M.D., Vincentiu

Popa, M.D., and Jo-Ann Shakarjian, M.D., seeking to recover money that State Farm alleges was

fraudulently and unjustly obtained through the submission of bills and supporting documentation

for topical compounded medications (hereinafter, "Compounded Products") provided to

individuals who were involved in automobile accidents and eligible for benefits under State

Farm insurance policies ("State Farm Insureds").  <u>See generally</u> Complaint, ECF No. 1.[1]

According to the Complaint, Compounded Products, which consist of various drugs combined in a topical cream, are appropriate when the unique needs of an individual patient cannot be met by a medication approved by the Federal Drug Administration ("FDA").  <u>Id.</u> ¶¶ 3-4, 32 (explaining that compounding "is a practice in which a licensed pharmacist or physician combines, mixes, or alters individual ingredients into a usable drug product . . . to create a medication tailored to the needs of an individual patient").  "Under federal law, compounding is permitted by a pharmacy like 21st Century if the drug is compounded for an identified individual patient based on the receipt of a valid prescription or a notation, approved by the prescribing practitioner on the prescription order, that a compounded product is necessary for the identified patient."  <u>Id.</u> ¶ 33 (citing 21 U.S.C. § 353a).  Plaintiff alleges that 21st Century does not tailor its Compounded Products to the particular needs of individual patients, and instead "simply assembles a routine combination of ingredients in a cream form, provides these creams to a variety of patients and charges as much as almost $9,000 . . . [per] tube."  <u>Id.</u> ¶ 4.

The charges for Compounded Products submitted to State Farm by 21st Century were "supported by prescriptions and letters of medical necessity" from Dr. Morley, Dr. Ajudua, Dr. Popa, Dr. Shakarjian and other physicians (collectively, the "Prescribing Doctors") that were "largely form documents, many of which [we]re supplied by 21st Century to the Prescribing Doctors, to be completed and signed."  <u>Id.</u> ¶¶ 2, 6.  The prescriptions consisted of "predetermined lists of Compounded Products manufactured by 21st Century on which the

---

[1] Under New York's No-Fault Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law §§ 5101-06, and related regulations, 11 N.Y.C.R.R. §§ 65-1-5 (collectively, the "No-Fault Laws"), automobile insurers like State Farm provide mandatory No-Fault Benefits to their insureds, including up to $50,000 for expenses incurred for medically necessary prescription drugs following an automobile accident.  Compl. ¶¶ 18-19.

Prescribing Doctors circle or mark the one they are prescribing for their patient" and the letters of medical necessity contained "boilerplate language that attest to the purported necessity of the Compounded Products." Id. ¶ 6.

Plaintiff alleges that 21st Century and the Prescribing Doctors knew that the Compounded Products for which they submitted claims to State Farm were not medically necessary for the following reasons: (1) there is no evidence that certain of the drugs in the Compounded Products can provide therapeutic benefits in topical form for the conditions for which they are prescribed; (2) there is no evidence that the combination of drugs in the Compounded Products are effective in treating the conditions for which they are prescribed; (3) there is no legitimate basis to provide an expensive Compounded Product, the efficacy of which is undocumented and unsupported, when there are other widely accepted and effective alternatives with well-documented therapeutic benefits at considerably lower costs; and (4) the Compounded Products were not tailored to the unique needs of individual patients and therefore not exempted from FDA approval. Id. ¶¶ 5-7, 35-66.

Plaintiff alleges that it incurred damages of more than $1.6 million in benefits paid since 2014 based upon the fraudulent charges, id. ¶ 8, and attaches to the Complaint a chart of 1,030 allegedly fraudulent claims, ECF No. 1-3.[2]  The appearing Defendants deny these allegations.[3]

---

[2] In addition to seeking compensatory damages, Plaintiff alleges a claim for declaratory relief against Defendant 21st Century pursuant to 28 U.S.C. § 2201, seeking "a judgment declaring that Defendant 21st Century is not entitled to collect No-Fault Benefits for any unpaid charges to date and through the trial of this case, and for supplementary relief, attorneys' fees, interest, and costs as this Court deems equitable, just, and proper."  Compl. ¶¶ 165-68.

[3] Defendants Dr. Morley and Dr. Shakarjian have not answered or otherwise appeared in this action, and certificates of default have been entered against them.  See ECF Nos. 28 & 29.

## II.     APPLICABLE LEGAL STANDARDS

### A.     Fed. R. Civ. P. 26

Rule 26 of the Federal Rules of Civil Procedure, which governs the scope and limits of discovery, provides that a party is entitled to discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).   The Rule sets forth the following factors to consider in analyzing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.

Prior to its current iteration, Rule 26 "has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery," with the amendments "[o]ver time . . . aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense."  Huayen Chen v. Stony Brook Univ., No. 15 Civ. 6698 (JMA) (AYS), 2018 WL 1368031, at *4 (E.D.N.Y. Mar. 16, 2018).  Before it was amended in 2000, Rule 26(b)(1) provided that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."  Fed. R. Civ. P. 26(b)(1) (1999).   Pursuant to the 2000 amendment, the scope of discovery to which a party was entitled was narrowed to information relevant to "any claim or defense of a party" and only upon a showing of "good cause" could the court order information relevant to "the subject matter of the action."  See Rule 26(b)(1), advisory committee's note to 2000 amendment (explaining that the amendment was intended to curb concerns about the overbreadth and

expense of discovery, and "signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"); see also In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1188 (10th Cir. 2009) (noting that the 2000 amendment "implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action"). The most recent amendments to Rule 26, in 2015, eliminated the court's discretionary authority to allow, upon a showing of good cause, discovery of matters "relevant to the subject matter involved in the action."  See Fed. R. Civ. P. 26(b)(1).

The 2015 amendment emphasized proportionality in Rule 26(b)(1)'s definition of the scope of discovery.  Although the proportionality factors "were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii) . . . [they] have now been restored to the place of their intended importance by their incorporation into the very definition of permissible discovery."  Huayen Chen, 2018 WL 1368031, at *5; see Rule 26(b)(1), advisory committee's note to 2015 amendment (noting that the amendment "restores the proportionality factors to their original place in defining the scope of discovery," and reinforces the "obligation of the parties to consider these factors in making discovery requests, responses, or objections"); see also Robertson v. People Magazine, No. 14 Civ. 6759 (PAC), 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly.").

"The burden of demonstrating relevance . . . [is] on the party seeking disclosure."  See State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (Dec. 3, 2015), R & R adopted, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).  To meet its

burden, the moving party must articulate a concrete "linkage between the discovery sought and the [claims or] defenses asserted in the case." Liberty Mut. Ins. Co. v. Kohler Co., No. 08 Civ. 867 (SJF) (AKT), 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010). Although the scope of relevance is broad, "[d]isclosure should not be directed simply to permit a fishing expedition." Id. (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974)); see Denim Habit, LLC v. NJC Boston, LLC, No. 13 Civ. 6084 (ADS) (SIL), 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016) ("The party seeking the discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition."). If the party seeking discovery satisfies its burden of showing relevance, the party resisting discovery "bears the burden of showing why discovery should be denied." Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc., No. 10 Civ. 3314 (RWS), 2016 WL 1659316, at *1 (S.D.N.Y. Apr. 15, 2016).

"A district court has broad latitude to determine the scope of discovery and to manage the discovery process." E.M. Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012), aff'd sub nom. Republic of Argentina v. NML Capital, Ltd., 573 U.S. 134 (2014); see Barbara v. MarineMax, Inc., No. 12 Civ. 368 (ARR) (RER), 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) ("Courts afford broad discretion in magistrate[] [judges'] resolution of discovery disputes."); Kohler, 2010 WL 1930270, at *2 ("[A] motion to compel is entrusted to the sound discretion of the district court.").

### B.    Fed. R. Civ. P. 45

Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties by subpoena. The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 34, which in turn is the same as under Rule 26(b). Fed. R. Civ. P. 45, advisory committee's note to 1970 amendment ("[T]he scope of discovery through a

subpoena is the same as that applicable to Rule 34 and other discovery rules."); see Fed. R. Civ.

P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b).").

A party which has properly served a subpoena "may move the court for the district

where compliance is required for an order compelling production or inspection." Fed. R. Civ. P.

45(d)(2)(B)(i). "The party issuing the subpoena must demonstrate that the information sought is

relevant and material to the allegations and claims at issue in the proceedings." Night Hawk Ltd.

v. Briarpatch Ltd., No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23,

2003). Relevance in this context is subject to the over-arching relevance requirement outlined in

Rule 26(b)(1). See In re Refco Sec. Litig., 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011)

("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1).").

## III. MOTION TO COMPEL PRODUCTION FROM DEFENDANTS

By letter motion dated September 10, 2018 (hereinafter, the "Motion to Compel

Defendants"), Plaintiff moved the Court for an order compelling Defendants to produce records

responsive to Plaintiff's first set of requests for the production of documents (Plaintiff's

"Document Requests").[4] See Pl's Mot. to Compel Defs., ECF No. 73. Plaintiff identifies the

following categories of records for which it asserts that Defendants' responses were insufficient:

(1) personal financial records, including bank records and tax returns, for Mr. Alishayev and Dr.

Ajudua; (2) "records related to other Alishayev businesses"; (3) complete patient records; and (4)

billing and claim records. Id. at 1. Defendants opposed the motion. See Defs.' Opp., ECF No.

83.

---

[4] As discussed in note 3 supra, Dr. Morley and Dr. Shakarjian have defaulted in this action. As
Plaintiff's motion to compel is directed only at those Defendants who have appeared–namely,
21st Century, Mr. Alishayev, Dr. Ajudua and Dr. Popa–references to Defendants in the context
of the Motion to Compel Defendants refers to the appearing Defendants.

A.      **Personal Financial Records**

Plaintiff's Document Requests to Mr. Alishayev and Dr. Ajudua each included the

following two requests:

> All Documents reflecting or relating to Your financial condition from
> January 1, 2014 to the present, including but not limited to, any general
> ledgers, balance sheets, income statements, and/or account statements.  If
> Your accounting documents are kept in electronic form such as
> QuickBooks, produce those ledgers and/or documents in electronic form.
>
> All of Your federal and state tax returns from 2014 to the present.

ECF No. 73-6 (Request Nos. 10 & 11 to Defendant Alishayev); ECF No. 73-7 (Request Nos. 9

& 10 to Defendant Ajudua).  Defendants Alishayev and Ajudua objected to the requests on the

grounds that they were "overly broad, unduly burdensome, vague and ambiguous" and "neither

particularized nor specific as to the documents being sought."  ECF Nos. 73-6 & 73-7.

1.      **The Parties' Arguments**

Plaintiff argues that the personal financial records of Defendants Alishayev and Ajudua

are (1) "relevant to who owns and controls 21st Century, Ajudua's numerous clinics, and who is

responsible for the conduct at issue," and (2) "critical to understanding the role of kickbacks to

incentivize doctors (including Ajudua) to prescribe 21st Century's products."  Pl.'s Mot. to

Compel Defs. 2.   As "relevant background" for the basis of its requests, Plaintiff notes that

discovery conducted thus far has "raised questions about who controls 21st Century's activities"

and has "revealed financial relationships between doctors prescribing 21st Century's

Compounded Products and 21st Century marketers."  Id. at 1-2.  At oral argument and in

discovery letters, Plaintiff has proposed that Defendants are engaged in an elaborate fraud

conducted through various companies that are owned by or associated with Defendants or

individuals associated with them.  Plaintiff cites evidence such as money paid by 21st Century to

numerous marketing and consulting companies, for which there is no documentation of the services provided. Plaintiff's suspicions concerning ownership and control of 21 Century and Prescribing Doctors' medical clinics, and potentially fraudulent financial arrangements, center on an individual named Peter Khaim, who, among other things, according to Plaintiff, owns many of the marketing and consulting companies that receive money from 21st Century, was the landlord of Dr. Ajudua's medical clinic, and loaned Mr. Alishayev money to start 21st Century.

Defendants argue that the scope of discovery must be bounded by the allegations and claims in the Complaint, which "are limited to the compounded products' lack of medical necessity and the amount 21st Century billed State Farm for its compounded products." Defs.' Suppl. Br. 2-3, ECF No. 93. They contend that the Complaint does not allege a kickback scheme and does not assert a claim under the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., making this action distinguishable from the cases cited by Plaintiff in support of its requests for broad discovery. Id. at 2-7. Defendants further note they have "diligently identified and produced documents and information responsive to Plaintiff's discovery requests, totaling more than 30,000 pages," including 21st Century's bank records, tax documents such as W-2s and 1099s for employees and consultants, and releases for bank accounts related to Dr. Ajudua's medical practices. Defs.' Opp. 1-2.

### 2. Analysis

The Court agrees with Defendants that the discovery sought by Plaintiff goes well beyond the specific claims and allegations in the Complaint. Although Plaintiff states that "Second Circuit courts have routinely allowed discovery of individual defendants' financial records" and cites numerous allegedly analogous cases in its submissions, see Pl.'s Mot. to Compel Defs. 2, a review of those case show that they involve claims not asserted here, such as RICO violations and fraudulent incorporation of medical clinics. See, e.g., State Farm Mut.

9

Auto. Ins. Co. v. Parisien, No. 18 Civ. 289 (ILG) (ST) (E.D.N.Y. May 25, 2018) (ECF No. 77),

Transcript of Motion Hr'g at 34:7-12 ("[Plaintiffs are] asking about financial information and

financial records of the named entities in a RICO fraud case that involved what is alleged to be a

conspiracy on all of these entities to engage in this fraud scheme.  I just don't see how their

financial records are not relevant to that."); Fayda, 2015 WL 7871037, at *2-3 (finding personal

bank records of defendant healthcare provider and his acupuncture company discoverable where

the complaint alleged that healthcare providers operated a racketeering enterprise in which "the

defendant healthcare providers gained access to patients by paying kickbacks, sometimes

disguised as rent for subleasing of space at the facility, to non-physicians, including another

defendant, who controlled the facility and its main tenants' medical practices"); State Farm Mut.

Auto. Ins. Co. v. Physiomatrix, Inc., No. 12 Civ. 11500 (DRG), 2013 WL 10572229, at *1-3

(E.D. Mich. Aug. 13, 2013) (ordering production of defendants' personal bank records in action

asserting a RICO claim).

Section 1962 of RICO "prohibits (a) the use of income derived . . . from a pattern of

racketeering activity to acquire an interest in, establish, or operate an enterprise engaged in or

affecting interstate commerce; (b) the acquisition of any interest in or control of such an

enterprise through a pattern of racketeering activity; (c) the conduct or participation in the

conduct of such an enterprise's affairs through a pattern of racketeering activity; and (d)

conspiring to do any of the above."  Conopco, Inc. v. Wein, No. 05 Civ. 9899 (RJH) (THK),

2007 WL 2119507, at *3 (S.D.N.Y. July 23, 2007) (alteration in original) (quoting GICC Capital

Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)).  A RICO enterprise is "a group

of persons associated together for a common purpose of engaging in a course of conduct," the

existence of which is proven "by evidence of an ongoing organization, formal or informal, and

by evidence that the various associates function as a continuing unit."  United States v. Turkette, 452 U.S. 576, 583 (1981).  Courts look to the hierarchy, organization, and activities of an alleged association to determine whether it functioned as a unit.  See Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 274 (E.D.N.Y. 2012) (citing United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991)).

In the context of a RICO claim, financial records like those sought by Plaintiff here, "may provide some relevant evidence of: (1) participation in the conduct of the RICO enterprise through a pattern of racketeering activity; (2) the use of the income derived from the racketeering activity to operate the RICO enterprise; (3) a conspiracy in which income derived from a pattern of racketeering activity is used to operate a RICO enterprise; and (4) motivation for participation in the RICO enterprise."  Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc. ("Sky Med II"), No. 12 Civ. 6383 (JFB) (AKT), 2017 WL 1133349, at *10 (E.D.N.Y. Mar. 24, 2017); see Physiomatrix, 2013 WL 10936871, at *7 (finding that in case asserting a RICO claim, the plaintiff was entitled to "discovery tending to prove the entirety of the 'scheme' alleged, and that such proof should not be limited solely to the predicate acts which underlie the RICO charge"); Eastman Kodak Co. v. Camarata, 238 F.R.D. 372, 375 (W.D.N.Y. 2006) (permitting discovery of bank account information where "plaintiffs have asserted broad civil RICO claims against the [] defendants").

The claims of common law fraud, unjust enrichment and aiding and abetting asserted in the Complaint here do not require the same kind of evidence justifying the same expansive scope of discovery.  Cf. Palumbo v. Shulman, No. 97 Civ. 4314 (JGK) (KNF), 1998 WL 436367, at *5 (S.D.N.Y. July 27, 1998) ("[P]laintiffs' attempt to use discovery to uncover evidence which might support an as yet unasserted RICO claim, is improper.").  The appropriate scope of

11

discovery must be considered in the context of the claims actually asserted in the Complaint. See 287 Franklin Ave. Residents' Ass'n v. Meisels, No. 11 Civ. 976 (KAM) (JO), 2012 WL 1899222, at *5 (E.D.N.Y. May 24, 2012) ("The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading." (quoting Unger v. Cohen, 125 F.R.D. 67, 71 (S.D.N.Y. 1989))); Eastman Kodak, 238 F.R.D. at 375 ("Any analysis of the relevance (or irrelevance) of the requested material must begin with an understanding of the claims asserted.").

Similarly, although Plaintiff alleges that the records are relevant to identifying the person who owns and controls 21st Century and Dr. Ajudua's clinics, Plaintiff has not alleged in the Complaint that these entities are illegally or fraudulently incorporated or owned. See, e.g., Fayda, 2015 WL 7871037, at *3 n.3 (rejecting the plaintiff's argument that even in the absence of fraudulent incorporation claim in the complaint, "nothing prevents" plaintiff from conducting discovery to determine if defendant corporation was fraudulently incorporated, and noting that "[d]iscovery is generally limited to 'information related to the actual claims and defenses involved in the action'" (quoting Guan Ming Lin v. Benihana Nat'l Corp., No. 10 Civ. 1335 (VM) (JCF), 2010 WL 4007282, at *3 (S.D.N.Y. Oct. 5, 2010) (emphasis in original))).  In federal cases related to alleged fraud as to no-fault insurance claims, it has been common to raise what are called Mallela claims.  See State Farm Mut. Auto Ins. Co. v. Mallela, 4 N.Y.3d 313, 322 (2005) (holding that insurance carriers may withhold No-Fault reimbursement payments for medical services provided by fraudulently incorporated enterprises to which insureds have assigned their claims pursuant to 11 N.Y.C.R.R. 65-3.16(a)(12)).  Plaintiff has not raised such claims in the Complaint as to medical Defendants and the case is not applicable to the pharmacy.

With respect to kickbacks, Plaintiff argues that although there is no mention of kickbacks

in the Complaint, the Complaint "does describe the likelihood of improper financial arrangements between 21st Century and the prescribing doctors," citing paragraphs 31 and 69 of the Complaint.  See ECF No. 76.  Those paragraphs are set forth in full below:

> Paragraph 31: Under New York law, a provider of healthcare goods or services is not entitled to No-Fault Benefits if the provider fails to meet any applicable New York state or local licensing requirement necessary to perform such services in New York.  See 11 N.Y.C.R.R. § 65-3.16(a)(12). Therefore, if 21st Century has financial arrangements with the Prescribing Doctors who are prescribing its medically unnecessary topical Compounded Products to State Farm Insureds in New York and those arrangements violate N.Y. Education Law § 6530(18) or N.Y. Public Health Law §§ 238(a) and 238-d, 21st Century would be ineligible to collect No-Fault Benefits.

> Paragraph 69: Patients have testified that, instead of being given prescriptions for the Compounded Products by the Prescribing Doctors to fill at a pharmacy of their choice, they receive the Compounded Products either at the Prescribing Doctor's office or by mail.  A patient of Dr. Ajudua's testified that his prescription for a Compounded Product was given to "[t]he ladies at the front desk" and that he received the Compounded Product thereafter through the mail.  This conduct is intended by 21st Century and the Prescribing Doctors to ensure that patients obtain Compounded Products only from 21st Century.  The same or similar Compounded Products could be obtained from many other suppliers and there is therefore no legitimate reason why prescriptions should be directed to 21st Century.  If there is a financial arrangement between 21st Century and the Prescribing Doctors, directing patients to obtain Compounded Products exclusively from 21st Century violates Public Health Law § 238(d)(1) and (2), which require the Prescribing Doctors to disclose their financial arrangements and provide patients with a specific alternative provider other than 21st Century.

Complaint ¶¶ 31, 69.  In paragraph 31, the statement that "if" there is a financial arrangement between 21st Century and Prescribing Doctors then 21st Century would be ineligible to collect No-Fault benefits is a conclusion of law, not a concrete factual allegation.  Cf. Smith v. Wilson, No. 15 Civ. 01215 (VAB), 2017 WL 9604614, at *2 (D. Conn. Aug. 9, 2017) (finding plaintiff's allegation that "[i]f [defendant] did use or did allow use of the . . . email(s) to directly communicate with the plaintiffs about the deal in question, then she is responsible for all the breaches of contract alleged in this complaint," to be "hypothetical, proposing potential

13

liability . . . without making concrete allegations" (first alteration in first quotation in original)). As to paragraph 69, the Court does not agree that the paragraph "describes the likelihood of improper financial arrangements between 21st Century and the prescribing doctors"; rather, it articulates the legal consequences that would result should such an arrangement exist.

Plaintiff's view of discovery, in which merely alleging that <u>if</u> a defendant engaged in illegal conduct when performing an act then the act would be fraudulent entitles a plaintiff to expansive discovery to explore whether illegal conduct existed, would, if permitted, expand the scope of discovery well beyond what is permissible under Rule 26. See <u>287 Franklin Ave.</u>, No. 2012 WL 1899222, at *6 ("[Plaintiff] has not met his burden of making a <u>prima facie</u> showing that the discovery sought is relevant. Plaintiffs' allegation that '[d]efendants <u>may</u> operate an additional fraudulent scheme' involving property that defendants '<u>may</u> have been attempting to purchase through a short sale,' provides an insufficient basis on which to support what appears to be a fishing expedition. Given the clearly speculative nature of the allegations, [Plaintiff] may not 'use discovery to uncover evidence that might support an as yet unasserted . . . claim.'" (emphasis in original) (first and fourth alteration in original) (internal citation omitted) (quoting <u>Palumbo</u>, 1998 WL 436367, at *5)); <u>Am. Comms. Ass'n, Local 10 v. Ret. Plan for Emps. of RCA Corp.</u>, 488 F. Supp. 479, 484 (S.D.N.Y. 1980) (A complaint is not "a hunting license to discover whether, in fact, a viable claim may be alleged . . . . The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made-not to discover whether a claim exists."), <u>aff'd without opinion</u>, 646 F.2d 559 (2d Cir. 1980)). Given the pleading gaps in Plaintiff's Complaint, and the minimal evidence offered in the discovery letters, Plaintiff has not shown that the requested discovery is relevant or proportional to the claims.

14

Even if it were arguable that the discovery was appropriate, Defendants have identified alternative sources for the information Plaintiff seeks.  See Rahman v. Smith & Wollensky Rest. Grp., No. 06 Civ. 6198 (LAK) (JCF), 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007) (noting that generally, where the information sought is determined to be relevant, "the party resisting disclosure should bear the burden of establishing alternative sources for the information" (quoting United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988))); see also Sadofsky v. Fiesta Prod., LLC, 252 F.R.D. 143, 149 (E.D.N.Y. 2008) ("In order for a requesting party to prevail on a motion to compel the production of tax returns, whether corporate or personal, the requesting party must satisfy a two-prong test: (1) the tax returns must be relevant . . . and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source.").  They also point out that Plaintiff has yet to review and cite the materials already provided, to show the requested materials may lead to relevant discovery.  State Farm is already in possession of 21st Century's bank records, available tax documents, including W-2s and 1099s for employees and consultants, and releases for bank accounts related to Dr. Ajudua's medical practices.  Defs.' Opp. 1-3.  Defendants note that with regard to Defendant Alishayev, the Complaint alleges that 21st Century, not Mr. Alishayev personally, made submissions to State Farm, and any payment State Farm made resulting from such submissions were paid to 21st Century, not Mr. Alishayev, so "[t]he best evidence of the disposition of such payments is therefore through 21st Century's bank records, not Alishayev's personal records."  Id.

Accordingly, the Court denies Plaintiff's request to compel production of personal

financial records, including bank records and tax returns, without prejudice.[5]

### B.     "Records Related To Other Alishayev Businesses"

Plaintiff argues that it is entitled to "records related to other Alishayev businesses" in

light of "questions about who owns and controls 21st Century."  Pl.'s Mot. to Compel Defs. 1-3.

According to Plaintiff, "[b]ased on the way in which defendants conducted their affairs and the

evidence established to date about how the scheme operates, it is reasonable to expect that

Alishayev used businesses other than 21st Century to perpetrate the conduct at issue," and

"[d]iscovery into those other businesses is likely to lead to admissible evidence."  Id. at 3.

Defendants note that Mr. Alishayev responded to an interrogatory request from Plaintiff

seeking information regarding "any and all businesses, investment vehicles, corporate entities,

trusts, or other legal entities in which You have or have had an ownership, equity, membership,

or any other financial interest," and that, despite having subsequently "met and conferred

numerous times regarding discovery issues . . . Plaintiff has not specified any further records it

seeks for these entities, [and] it is unclear what '[d]iscovery into those other businesses' Plaintiff

seeks."  Defs.' Opp. 3.

The Court agrees that it is not clear what records Plaintiff seeks.  In stating that

Defendant Alishayev "objected to providing information concerning his businesses other than

21st Century," Plaintiff cites the same requests for financial records at issue in Part III.A above,

---

[5] Plaintiff confirms that Dr. Ajudua has produced signed IRS authorizations to release corporate tax returns, but maintains that "he continues to have an obligation to produce documents in his possession and should produce any returns he actually has."  Pl.'s Mot. to Compel Defs. 3.  In response, Defendants' counsel explains that the IRS authorizations for Dr. Ajudua's previously owned medical entities were provided because "he is no longer in possession of records relating to same."  Defs.' Opp. 3.  In light of this representation, Plaintiff's motion to compel is denied to the extent that it seeks an order compelling Dr. Ajudua to produce corporate tax records not in his possession.  See, e.g., Sky Med I, 2016 WL 4703656, at *11 ("To be sure, defendants cannot be faulted for failing to produce records they do not have." (internal quotation marks omitted)).

see Pl.'s Mot. to Compel Defs. 2-3, but does not provide any further explanation as to why it believes the response was deficient.  More fundamentally, neither the Complaint nor Plaintiff's supplemental argument justify an expansive exploration of all of Defendant Alishayev's businesses unrelated to 21st Century, or the release of confidential tax material.

As to these records, Plaintiff's motion to compel is denied without prejudice.

### C.    Patient Records

Plaintiff requested that Defendant produce "all patient records related to the provision of 21st Century's Compounded Products, including all prescriptions, letters of medically necessity, examination forms, medical notes, communications, and any other responsive medical documentation."  Pl.'s Mot. to Compel Defs. 4.  In response, Defendant 21st Century has produced (1) "delivery slips" for Compounded Products provided to both State Farm Insureds and patients not insured by State Farm; (2) "Drug Dispensed Reports" for every compound dispensed by 21st Century from 2013 through July 26, 2018, regardless of insurer; and (3) all responsive communications identified to date.  Defs.' Opp. 3-4 (noting that Defendants "do not normally correspond with patients in writing or via electronic means in the ordinary course of business").  Defendants 21st Century and Mr. Alishayev object to producing additional records on the basis that all patient records for each claim at issue in this litigation were provided to State Farm as part of the regular "billing and verification process."  Id. at 3.

Plaintiff argues it is entitled to the records of patients not insured by State Farm, explaining that "[a]mong the ways [State Farm] will prove that the Compounded Products were unnecessary is by showing that patients received the same formulas regardless of their individual medical needs[] [and] [t]he treatment records of all 21st Century patients are relevant are relevant to this analysis."  See Pl.'s Mot. to Compel Defs. 4.  Weakening this argument is the

17

fact that Plaintiff has the records for at least the 1,030 claims for State Farm Insureds submitted by 21st Century that are included in the chart attached to its Complaint.  See ECF No. 1-3. According to the Complaint, "21st Century's charges are typically supported by a Health Insurance Claim Form (known as a 'CMS-1500'), a Verification of Treatment by Attending Physician or Other Provider of Health Services ('Verification'), and an Attached Services sheet, and/or a Statement of Account, delivery slip or other summary of the items purportedly provided to patients, each of which, among other things, lists the purported active ingredients in the Compounded Products, the quantity of each such ingredient, and the price for each such ingredient."  Complaint ¶ 71.  Plaintiff does not explain how these records, together with the delivery slips and Drug Dispensed Reports provided to Plaintiff in discovery, are insufficient for the purpose of showing the alleged pattern of non-individualized compounds being prescribed. See State Farm Mut. Auto Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C., No. 14 Civ. 11521 (MAG), 2015 WL 4094115, at *3-4 (S.D. Mich. July 7, 2015) (denying State Farm's request for records of patients for whom the defendants sought reimbursement from other insurers, and "question[ing] whether the provision of thousands of non-party files [would] help Plaintiff prove its case, if the records for the approximately 200 State Farm patients fail to sufficiently reveal the 'predetermined protocol'" that Plaintiff claimed the requested records were relevant to establishing).  The Court's weighing of the proportionality of Plaintiff's request is heightened by the patient privacy concerns implicated.  See id. at *5 (noting that the patient records sought by State Farm contained "highly sensitive and protected medical information of non-parties to the action" and that "[e]ven with a protective order in place . . . the potential harm to those individuals . . . outweigh the benefit that these documents may provide at this time"); cf. Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc. ("Sky Med I"), No. 12 Civ. 6383 (JFB)

(AKT), 2016 WL 4703656, at *12 (E.D.N.Y. Sept. 7, 2016) ("When determining proportionality, the court balances the value of the requested discovery against the cost of its production." (internal quotation marks omitted)); Vaigasi v. Solow Mgmt. Corp., No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) (explaining that proportionality "focuses on the marginal utility of the discovery sought" and that "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate").[6]   As to records of patients not insured by State Farm, Plaintiff's motion is denied without prejudice.

With respect to Dr. Ajudua and Dr. Popa, they have explained that they are not in possession of responsive patient records.  See Defs.' Opp. 4.  Dr. Popa states that such records are in the possession of his former employer, Metro Pain Specialists P.C.  Id.  Dr. Ajudua states that he no longer practices medicine, that his facilities were taken over by another doctor, and that all medical records were transferred to that doctor pursuant to applicable laws and regulations.  Id. at 4 & n.5.  Plaintiff's motion is denied to the extent that it seeks an order compelling Dr. Ajudua and Dr. Popa to produce patient records.  Likewise, as Defendants state that they have produced all responsive patient communications identified to date, Plaintiff's motion is denied as to communications.  Plaintiff's motion is also denied with respect to patient records of State Farm Insureds which have been submitted as part of the regular claims

---

[6] In support of its request, Plaintiff cites State Farm Mut. Auto. Ins. v. Univ. Rehab Servs., Inc., No. 15 Civ. 10993 (VAR) (APP), 2017 WL 840509 (E.D. Mich. Mar. 3, 2017), which found files for patients not insured by State Farm to be discoverable "in light of the various RICO counts within the amended complaint" which "entitled [State Farm] to discovery related to all victims of the alleged racketeering scheme and regarding allegedly fraudulent claims made to insurers other than Plaintiff State Farm, because such information would tend to support the finding of a pattern of mail fraud and/or identify the number of victims."  Univ. Rehab, 2017 WL 840509, at *2   As Plaintiff has not alleged a RICO claim, the analysis in University Rehab is inapplicable here.

submissions process.  To the extent Plaintiff identifies specific information or records missing from the records submitted with those claims, Plaintiff can make a targeted request.

### D.      Billing and Claim Records

Plaintiff has requested that 21st Century and Mr. Alishayev produce all documents relating to any bill submitted to State Farm for any Compounded Product.  Pl.'s Mot. to Compel Defs. 4.  Defendants have object to this request "as each and every bill has already been submitted to State Farm, along with all supporting information, as part of the billing and verification process.  In fact, such bills are the basis for the instant litigation."  Defs.' Opp. 4 Defendants further state that "because records relating to patients are stored by patient name and not by the insurer to which they are billed, collecting each record to reproduce to Plaintiff is unduly burdensome," and that the "burden is not proportional to the needs of the case as the resulting documents are documents that 21st Century has already provided Plaintiff."  Id.  The Court agrees with Defendants.  Plaintiff's motion does not state whether Plaintiff is already in possession of the billing and claim records it seeks, whether it has reason to believe that certain records or missing, or any other basis for imposing on Defendants the burden of production, which they explain would require Defendants to "manually search for each patient associated with each bill submitted to State Farm, and then cull through the results to separate those relating to compounding prescriptions from those that are not."  Id. at 4 n.6.  As with the patient records for State Farm Insureds submitted to State Farm as part of the regular claims submission process, if Plaintiff identifies specific information or records it believes to be missing, Plaintiff can make a targeted request.

## IV.    MOTIONS TO COMPEL PRODUCTION FROM NON-PARTIES

Plaintiff has filed three separate motions to compel the production of documents from a total of twenty Non-Parties, including fourteen marketing and consulting companies, two medical providers, two billing and collection companies, a financing company and a construction company.  See First Motion to Compel Non-Parties, ECF No. 44 (seeking to compel production from eight Non-Parties)[7]; Second Motion to Compel Non-Parties, ECF No. 57 (seeking to compel disclosure from three Non-Parties); Third Motion to Compel Non-Parties, ECF No. 84 (seeking to compel disclosure from nine Non-Parties).[8]

Plaintiff served subpoenas on each of the non-parties, seeking information that the Court summarizes as falling into the following four categories: (1) information concerning the subpoenaed non-party's relationship with any Defendant, including communications, documents reflecting services performed, payments made or received, and documents reflecting any contractual relationship, financial arrangement, or other business relationship; (2) information concerning the subpoenaed non-party's relationship with other non-parties, including communications, documents reflecting services performed, payments made or received, and documents reflecting any contractual relationship, financial arrangement, or other business relationship; (3) financial, corporate, and employment records of the subpoenaed non-party; and

---

[7] The First Motion to Compel Non-Parties also involved a ninth non-party, Raymark Compliance, Inc. ("Raymark").  The Motion was withdrawn without prejudice as against Raymark.  See 8/9/2018 Order, ECF No. 62.

[8] This Memorandum and Order is applicable to the following twelve non-parties: JAR Marketing & Consulting LLC; K&L Consulting Inc.; Logic Consulting Inc.; New Business Resources Group Inc.; Tangent-EHR, LLC; Anturio Marketing, Inc.; P&K Marketing Services, Inc.; NY Collection Services, Inc.; DGRD Marketing Inc.; New Business Funding Inc.; TAR Group Inc.; and TBM Solution Inc.  The remaining eight non-parties, having failed to respond to Plaintiff's subpoenas and the Court's orders, are addressed in a separate report and recommendation.

(4) information concerning the subpoenaed non-party's involvement with the Compounded Products or patient referral and/or solicitation.  In connection with category (2), the subpoenas attach a list of approximately forty non-party marketing and consulting companies and a list of over fifty medical providers.  Plaintiff's arguments in support of these motions largely overlap with its arguments in support of its motion seeking discovery from Defendants.

The Court denies Plaintiff's motions to compel for substantially the same reasons discussed in the section addressing Plaintiff's motion to compel production from Defendants above.  As with the motion to compel production from Defendants, Plaintiff argues that case law supports its requests, but relies on cases involving claims not asserted here, such as RICO claims and Mallela claims.  See State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC, 255 F. Supp. 3d 700, 710 (S.D. Mich. 2017) (denying non-parties' motions to quash subpoena for bank records, explaining that "financial information such as that sought from the Non-Parties appears to be primary means of proving a RICO scheme"); Univ. Acupuncture Pain Servs. v. State Farm Mut. Auto. Ins. Co., No. 01 Civ. 7677 (SAS), 2002 WL 31309232, at *4-5 (S.D.N.Y. Oct. 15, 2002) (ordering non-party to produce financial records in case involving claim that the defendant acupuncture clinic was owned or controlled by an unlicensed individual and thus not entitled to no-fault insurance payments).  No such claims are asserted in the Complaint in this case.

Plaintiff also argues that the Complaint "puts the affairs of the non-parties at issue and makes them appropriate subjects of discovery."  Pl.'s Supp. Br. 3, ECF No. 92.  As discussed above, the theories to which these requests relate–namely, that the allegedly fraudulent bills submitted by 21st Century were the result of kickbacks funneled through the subpoenaed non-parties, and that 21st Century may not be owned and/or controlled by Mr. Alishayev–are not pleaded in the Complaint.

The Court has held several conferences concerning discovery in this action in which the Court has described its concerns with the disproportionality of Plaintiff's requests for expansive discovery of separate corporate entities not named as Defendants. In attempting to justify the basis for Plaintiff's broad discovery requests at one such conference, Plaintiff's counsel explained:

> [W]hen we filed the complaint, there's no question that we didn't have the detail that we have now . . . . But what [State Farm] can know is that it got these prescriptions and it looked at them and they didn't make any sense. They were medically unnecessary and the ways in which they were being submitted, and we allege this in the complaint, that they were all exactly the same. . . . And there was no reason for these patients to be getting thousands of dollars worth of tubes of stuff unless something else was going on. And that's what we said. We said unless something else is going on. Now we didn't know what the something else was going on, all right? But what is the something --"

9/14/2018 Hr'g Tr. 14:19-15:24, ECF No. 89. The Court has no view as to whether Plaintiff's suspicions as to a fraudulent scheme exists among these entities, but suspicions without factual support or a meaningful connection is not a responsible basis on which to put those entities to the expense and burden of collecting discovery for a case in which they are not parties and in which party discovery is ongoing and expansive. See, e.g., Palumbo, 1998 WL 436367, at *5 ("Permitting plaintiffs to delve into the non-parties' investment portfolios for the purposes articulated by the plaintiffs would be tantamount to permitting them to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."); Am. Comms. Ass'n, 488 F. Supp. at 483 ("The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made not to discover whether a claim exists."). Such discovery would disregard the corporate form and the protections afforded to separate entities. Simply doing business with a defendant is not a basis for permitting discovery by association. Plaintiff may only seek proportionate

discovery on the current record, which this is not.

In sum, the Court finds that Plaintiff's requests for expansive non-party discovery exceed the permissible scope of discovery and must be denied without prejudice to renewing should the requested records' relevance be shown through further discovery or amendment of the Complaint.

**SO ORDERED.**

Dated: Brooklyn, New York
      January 18, 2019

*Vera M. Scanlon*
Vera M. Scanlon
United States Magistrate Judge