**Katten**
Katten Muchin Rosenman LLP

July 30, 2019

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
www.kattenlaw.com

**VIA ECF**

JONATHAN L. MARKS
jonathan.marks@kattenlaw.com
312.902.5337 direct
312.577.4518 fax

The Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *SFMA, et al. v. 21st Century Pharmacy, Inc., et al.*,
17-cv-5845 – Response to Motion to Disqualify

Dear Judge Scanlon:

Defendants 21st Century Pharmacy, Inc. ("21st Century") and Albert Alishayev (collectively "defendants") have moved to disqualify Katten Muchin Rosenman LLP ("Katten") from representing State Farm Mutual Automobile Insurance Company ("SFMA") in this matter. *See* DE 128–29. They contend that Katten attorneys are fact witnesses who must provide testimony and therefore must be disqualified pursuant to Rule 3.7 of the New York Rules of Professional Conduct — the "witness-advocate rule." The Motion must be denied because defendants do not meet the heavy burden and high standard of proof required before a lawyer will be disqualified. First, defendants' claim that they can obtain testimony from Katten attorneys depends on assertions that all of Katten's communications with SFMA are discoverable and are not privileged, but that premise is erroneous and based on fundamental misstatements of the law. Second, defendants have not shown that Katten attorneys could provide relevant testimony, let alone necessary testimony that cannot be obtained from another source. Third, even if Katten attorneys provided testimony, defendants have not even attempted to address how SFMA would be prejudiced by such testimony, an element that must be satisfied before disqualification. Finally, the Motion appears to seek disqualification of the entire Katten firm, not only particular lawyers, but it does not even discuss the rule or factors applicable for so severe a result.

*Legal Standard*. Defendants' Motion must be analyzed in the context established by the Second Circuit. "[B]ecause disqualification interferes with a party's right to [choose] counsel, and motions to disqualify are often interposed for tactical reasons, the Second Circuit disfavors such motions." *Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005); *see Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 372 (E.D.N.Y. 2010); *accord Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (warning that motions to disqualify counsel "should be viewed with extreme caution for they can be misused as techniques for harassment"). The "party seeking disqualification must carry a 'heavy burden,' and must meet a 'high standard of proof' before a lawyer is disqualified." *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991).

Defendants contend Katten attorneys should be disqualified pursuant to Rule 3.7(a) of the New York Rules of Professional Conduct — the witness-advocate rule. Rule 3.7(a) provides that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. R. Prof. Conduct 3.7(a). The Second Circuit has

admonished that "Rule 3.7 lends itself to opportunistic abuse." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). In order to disqualify an attorney on the basis of the witness-advocate rule, a party must demonstrate that the attorney's testimony is both necessary and substantially likely to be prejudicial. *Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994). The Second Circuit has explained that "[b]ecause courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions under the witness-advocate rule." *Murray*, 583 F.3d at 178.

*Analysis*. The starting point of the analysis must be to recognize that defendants' motion to disqualify and corresponding motion to compel production of privileged documents [DE 130–31] were "interposed for tactical reasons[.]" *Hickman*, 371 F. Supp. 2d at 229. Both motions appear to be part of a strategy to strong-arm SFMA into terminating its case by threatening to deprive it of its chosen counsel and forcing quick resolution that stops the exposure of defendants' fraud scheme. Indeed, this precise tactic appears to have been employed by defendants in *Allstate Ins. Co. v. 21st Century Pharmacy, Inc.*, No. 17-7371 (E.D.N.Y.), where they filed a motion to disqualify and were about to file a motion to compel based on the same theories, and shortly thereafter the case settled. Defendants' tactic should not be countenanced, and their Motion must be analyzed through the filter of this history.

Given this backdrop, it should not be surprising that defendants cannot meet their heavy burden of establishing (a) that testimony of Katten attorneys is necessary; or (b) that testimony of Katten attorneys is substantially likely to be prejudicial to SFMA.

First, the necessity of such testimony depends on defendants' assertions that every one of Katten's communications with SFMA is discoverable and is not privileged, and that as a result Katten attorneys can be required to testify about them. According to defendants, (1) Katten was involved in SFMA's verification of 21st Century's claims and the process by which decisions were made to pay or deny claims; (2) under New York law no act or communication related to the "verification" process is ever privileged; and (3) as a result, every communication between Katten and SFMA is discoverable. Defendants are wrong. First, as described more fully in SFMA's response to the motion to compel, there is absolutely no support for the claim that there can be no privileged acts or communications involving claims handling. *See* Resp. to Motion to Compel at 3–4. Equally absurd is the argument that because Katten may have represented SFMA while it was handling claims that every communication between Katten and SFMA may be explored. Under defendants' theory — because insurers are in the business of handling claims and business activity is not privileged, there can be no privileged exchanges about claims handling — no insurance company, or any business for that matter, could obtain confidential legal advice about its business. That is obviously not the law. *See, e.g.*, *105 St. Assocs., LLC v. Greenwich Ins. Co.*, 2006 WL 3230292, at *3 (S.D.N.Y. Nov. 7, 2006) ("[i]n the context of insurance litigation, attorney-client communications have been denied protection when it appears the attorney is merely investigating a claim on a policy, . . . [but] when such communications relate to legal advice, they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim"). Moreover, defendants have not pointed to or established any act by Katten or event that could extinguish the privilege. They do not claim, nor could they, that Katten ever acted in a non-attorney capacity. They do not assert, nor could they, that Katten, rather than SFMA made any claims decision about whether to pay or deny a claim. The fact that a Katten attorney took Alishayev's EUO and received some of 21st Century's verification submissions does not alter the analysis. It is nearly always if not always

the case that attorneys take EUOs, and Katten attorneys' receipt of some verification submissions does not mean a lawyer made a claims decision or render the attorneys' knowledge discoverable. *See, e.g.*, *Harding v. State Farm Fire & Cas. Co.*, 2018 WL 1368028, at *2–3 (E.D.N.Y. Mar. 16, 2018) (communications between claim specialist and attorney regarding EUO not discoverable because they were "well beyond that of a non-lawyer investigator" and "made for the purpose of facilitating the rendition of legal advice or services in the course of a professional relationship"). As the law makes clear, the determination of privilege turns not on sweeping statements about verification, but on an analysis of specific communications to determine whether they meet the specific criteria for privilege, *see Cimato v. State Farm Fire & Cas. Co.*, 2018 WL 635918, at *2 (W.D.N.Y. Jan. 31, 2018), something defendants have not even attempted to do. To rule otherwise would fundamentally alter privilege law and deprive insurers of well-established privileges.

Even if Katten's information were not privileged, defendants have not established how Katten attorneys' testimony would be relevant. The only argument defendants offer, in a footnote, is that it would be relevant to whether SFMA reasonably relied on defendants' false statements when it paid 21st Century's claims for compounded products. But the issue would not be whether Katten and its attorneys relied, but whether SFMA relied and the best and only relevant inquiry would be what SFMA and its claims personnel knew and decided. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (must show in fraud case reliance by other party). As noted, defendants have not, and cannot, establish that Katten attorneys ever made a claims decision. Certainly, the best evidence on the issue of reliance would be the SFMA personnel who made the decisions and the massive volume of claims documents that have already been produced.

Moreover, any information Katten would have is at best cumulative of testimony SFMA can give. Defendants state in conclusory fashion that "no other witnesses" can provide the information they need. But they do not come close to meeting the legal requirement of establishing that "the testimony they seek is limited to matters exclusively within [plaintiff's attorney's] knowledge." *Sea Tow Int'l, Inc. v. Pontin*, 2007 WL 4180679, at *4 (E.D.N.Y. Nov. 19, 2007) (denying motion, finding defendants failed to establish testimony was "exclusively within [plaintiff's attorney's] knowledge. Rather, all of the information defendants seek can be obtained from either [defendants] or from [the plaintiff's] representatives . . . . Accordingly, such testimony by [plaintiff's attorney] would be merely cumulative of other evidence."). Indeed, courts have made clear that if attorney testimony would only corroborate or duplicate that provided by other witnesses, disqualification is not appropriate. *Id.*; *see Hecklerco, LLC v. Yuuzoo Corp. Ltd.*, 2016 WL 7742783, at *4 (S.D.N.Y. Dec. 16, 2016) ("Where an attorney's testimony would be cumulative or corroborative of that provided by other witnesses, the testimony cannot be said to be necessary, and disqualification is inappropriate." ); *Metal Mgmt, Inc. v. Schiavone*, 2007 WL 2705523, at *3 (D. Conn. Sept. 13, 2007) (plaintiffs' counsel not disqualified because "[w]hile under various circumstances [his] testimony could prove useful in the[ ] proceedings, it [was] not obvious that he [would] be needed as a witness given the abundance of evidence at the parties' disposal;" and defendant "provided no reason why [plaintiffs' counsel's] testimony and not any of the other resources available ought to be introduced at the hearing"). Defendants fail to explain why anyone at SFMA could not provide more appropriate, or simply equally valuable testimony. Significantly, defendants make a motion demanding Katten attorney depositions ***without having deposed a single witness in this case***, or suggesting why the over two million pages of SFMA documents produced fail to inform

3

them about SFMA's claims decisions. Indeed, cases in which courts have found an attorney's testimony to be necessary show how different those situations are from that presented here. *See Gandler v. Nazarov*, 1994 WL 391665, at *2 (S.D.N.Y. July 28, 1994) (disqualifying defendant's counsel who was "intimately involved in the negotiation and execution" of the contract at issue and was a "necessary" witness, "the only witness who could contradict [defendant's] testimony for the plaintiffs"); *Crews v. Cty. of Nassau*, 2007 WL 316568, at *4–5 (E.D.N.Y. Jan. 30, 2007) (attorney's testimony necessary because it was the "only direct evidence supporting plaintiffs' depiction of certain critical events" and noting that "it is hard to imagine how plaintiffs' claims can succeed without [the attorney's] testimony").

Next, defendants fail to address the second factor required for disqualification — that a Katten attorney's testimony is substantially likely to be prejudicial to SFMA. It is defendants' burden to demonstrate "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Murray*, 583 F.3d 173 at 178. "'Prejudice' in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Id.* All defendants argue is that Katten attorneys have knowledge regarding verification of 21st Century's claims and that verification is relevant to SFMA's reliance on 21st Century's submissions. Nowhere do defendants identify what testimony a Katten attorney may provide, much less that it is substantially likely to be prejudicial to SFMA. *See In re Corp. Res. Servs., Inc.*, 595 B.R. 434, 447 (Bankr. S.D.N.Y. 2019) (movant did not establish attorney testimony would be prejudicial — "it seems just as likely that he" would provide testimony helpful to client). Even if Katten attorneys were required to disclose privileged communications and testify, it is highly likely that such testimony would support SFMA's position that it justifiably relied on defendants' false statements. Such testimony could hardly be prejudicial.

Finally, defendants have no basis to seek disqualification of the entire Katten firm. Disqualification of an entire firm requires analysis under Rule 3.7(b). But the Motion cites and relies exclusively on Rule 3.7(a), and thus any claim to disqualify the entire firm should be considered waived. Moreover, the Motion does not come close to satisfying the standards under Rule 3.7(b). "Motions brought under Rule 3.7(b) . . . should be ordered sparingly and only when the concerns motivating the rule are at their most acute." *GEICO v. Saco*, 2014 WL 12834837, at *2 (E.D.N.Y. Sept. 30, 2014). Under Rule 3.7(b), "a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that . . . the witness will provide testimony prejudicial to the client, and . . . the integrity of the judicial system will suffer as a result." *Id.* Defendants have not even argued that the firm's testimony would be prejudicial to SFMA, much less proven it, and indeed there is every indication that it would be helpful. Nor have they argued, nor is there any basis to argue, that Katten's continued representation would negatively impact the integrity of the judicial system. Even if the arguments in defendants' deeply flawed Motion had traction, they are directed only to individual attorneys they purportedly to seek to depose and call to testify.

Defendants' Motion should be denied. They have failed to establish that there is any non-privileged information Katten attorneys could provide or that any Katten attorney's testimony is necessary or substantially likely to be prejudicial to SFMA. The Motion is a litigation tactic that should not be condoned.

Respectfully submitted,

*/s/ Jonathan L. Marks*

Jonathan L. Marks