UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
STATE FARM MUTUAL AUTOMOBILE           :
INSURANCE COMPANY, et al.,             :
                                       :
                  Plaintiff,           :     **MEMORANDUM AND ORDER**
                                       :
        -against-                      :     17 Civ. 5845 (MKB) (VMS)
                                       :
21ST CENTURY PHARMACY, INC., et al.    :
                                       :
                  Defendants.          :
                                       :
                                       :
-------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Defendants 21st Century Pharmacy, Inc., Albert Alishayev, Azu Ajudua, Vincentiu Popa, and Iris Itskhakov (collectively, "Moving Defendants") move to: (1) compel production of the documents Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "Plaintiffs" or "State Farm") withheld as privileged; and, (2) disqualify Plaintiffs' counsel, attorneys at Katten Muchin Rosenman LLP ("Katten"), on an individual and firm-wide basis. ECF Nos. 128-131, <u>generally</u>.[1] For the reasons set forth below, Moving Defendants' motion to compel is granted in limited part and otherwise denied, while their motion to disqualify is denied in its entirety.

**I.      Background**

Plaintiffs allege that Defendants in this matter fraudulently submitted bills and supporting documentation for medically unnecessary and illegitimate topical compounded medications

---

[1] Moving Defendants requested and were granted permission to file their motions under seal and redacted versions publicly on the grounds that the documents and information contained therein was confidential pursuant to the parties' protective order. <u>See</u> ECF Nos. 124-125; Dkt. Entries dated 7/19/2019.

prescribed to individuals insured by State Farm. See generally, Amended Complaint, ECF No. 132. State Farm represents that it has produced over two million pages of documents in furtherance of these claims thus far, including claim files for all of the individual claims underlying their allegations, as well as the non-privileged portions of the State Farm Multi-Claim Investigative Unit's file, which amounts to over 31,000 pages of documents, i.e., 92% of the file. ECF No. 148 pp. 1-2. State Farm has withheld and asserted the attorney-client and attorney work-product privileges over approximately 600 documents, many of which are duplicates or early versions of one another. Id. n. 1.

Moving Defendants challenge Plaintiffs' assertion of privilege, largely based on the argument that the withheld documents pertain to verification of individual claims made in the state-law required payment process under the no-fault insurance scheme for which Plaintiffs provided individual insurance coverage. See ECF Nos. 130, 131, generally. Moving Defendants contend that the withheld documents are not privileged because "the payment or rejection of claims is a part of the regular business of an insurance company. Consequently, reports that aid it in the process of deciding which of the two indicated actions to pursue are made in the regular course of its business." Landmark Ins. Co. v. Beau Rivage Rest., Inc., 121 A.D.2d 98, 101, 509 N.Y.S. 2d 819, 821 (2d Dept. 1986).

Moving Defendants also move to disqualify Plaintiffs' attorneys, and Katten generally, under the witness-advocate rule. ECF Nos. 128, 129, generally. Moving Defendants assert that the Katten attorneys were involved in the underlying claims verifications and investigations, including the examinations under oath (EUO's) of certain Defendants, and are thus witnesses to those events, some of which Defendants argue support their opposition to the "justified reliance"

2

element of State Farm's fraud claims against Defendants. Id. The Court has considered the Parties' submissions, and it has reviewed the withheld materials in camera.

## II. DISCUSSION

### A. Moving Defendants' Motion to Compel

As indicated above, Moving Defendants have moved to compel the production of "the documents related to the verification of claims, including the entire [Multi-Claim Investigation Unit] file that is created as part of the verification process" which they contend "are not protected from discovery by any claim of privilege, and therefore must be produced." ECF No. 130, p. 3. Plaintiffs have asserted two privileges over the documents at issue: the work-product privilege and the attorney-client privilege. ECF No. 148 p. 2.

#### 1. The Work-product Privilege

"[F]ederal law governs the applicability of the work-product doctrine in all actions in federal court." Weber v. Paduano, No. 02 Civ. 3392 (GEL), 2003 U.S. Dist. LEXIS 858, at *10, 2003 WL 161340, at *6 (S.D.N.Y. Jan. 14, 2003) (citation omitted). Under Fed. R. Civ. P. 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or of trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A); see Sorin v. United States DOJ, 758 F. App'x 28, 31 (2d Cir. 2018). "The purpose of th[is] doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995).

Although Defendants are correct that "courts have routinely held that documents created during any part of a factual investigation to arrive at a claim decision are prepared in the ordinary

3

course of an insurer's business and are not protected by the work-product privilege. . . . [T]here may come a point when an insurance company's activities shift from the regular and ordinary course of business to [']in anticipation of litigation[']." Ocean Walk Ltd. v. Certain Underwriters at Lloyd's of London, No. 03 Civ. 5271 (DRH) (ARL), 2005 U.S. Dist. LEXIS 51517, at *8, 2005 WL 8160993, at *3 (E.D.N.Y. Jan. 25, 2005) (internal citations omitted). An insurer may demonstrate that it had reached this tipping point by presenting "specific competent proof that it possessed a 'resolve to litigate' when the documents were created." AIU Ins. Co. v. TIG Ins. Co., No. 07 Civ. 7052 (SHS) (HBP), 2008 U.S. Dist. LEXIS 66370, at *36, 2008 WL 4067437, at *12-13 (S.D.N.Y. Aug. 28, 2008) (citations omitted).

Except as discussed further below, the key factual predicate for Defendants' arguments – that the documents withheld pertained to individual claims decisions made in the ordinary course of business – is unsupported by the Court's review of the documents themselves. Rather, the majority of the documents reviewed by the Court pertain to and/or contained aggregated information regarding multiple claims that had been submitted by numerous claimants. They appear to have been prepared by the Multi-Claim Investigative Unit for purposes of summarizing investigation findings, and of looking for patterns, discrepancies, statistical anomalies and the like in anticipation of the instant lawsuit (or similar); and they do not appear to have been prepared in furtherance of decisions on individual claims. They were therefore appropriately designated and withheld as, inter alia, attorney work-product.

  a. **Documents Created Before October 20, 2015, May Not Be Withheld As Attorney Work-Product**

The Court's review of the documents at issue reveals that the investigation into 21st Century Pharmacy and Defendants was initiated on or about October 20, 2015. Prior to this date, the record does not show that Plaintiffs possessed a "resolve to litigate" against Moving

4

Defendants. Rather, the documents created prior to that date pertained to either broader investigations nationwide or to preliminary investigations into 21st Century Pharmacy, before any investigatory project focused on Defendants. The Court attributes these investigations to the ordinary course of Plaintiffs' business, particularly as, true to its name, it appears to be part of the ordinary course of business for the "multi-claim investigation unit" to conduct, inter alia, broad and preliminary investigations looking for potential "issues of concern," even when it has not yet formed a specific intent to transform those investigations into litigation. Thus, because the documents created before the 21st Century investigation was even opened cannot have been "created in anticipation of litigation," they may not be withheld under the attorney work-product privilege. Based on the Court's review, Plaintiffs must turn over the documents bearing privilege log nos. 4, 55 and 526.

**2. The Attorney-client Privilege**

As this case is based on diversity jurisdiction, New York Law governs Plaintiffs' assertion of attorney-client privilege. See Fed. R. Evid. 501; Ocean Walk Ltd., 2005 U.S. Dist. LEXIS 51517, at *21, 2005 WL 8160993, at *2. "The [attorney-client] privilege protects 'communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.'" ACLU v. NSA, 925 F.3d 576, 589 (2d Cir. 2019) (quoting United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011)). Notwithstanding, and as discussed above,

> The payment or rejection of claims is a part of the regular business of an insurance company. Consequently, reports which aid it in the process of deciding which of the two indicated actions to pursue are made in the regular course of its business. Reports prepared by insurance investigators, adjusters, or attorneys before the decision is made to pay or reject a claim are thus not privileged and are discoverable even when those reports are 'mixed/multi-purpose' reports, motivated in part by the potential for litigation with the insured.'

Melworm v. Encompass Indem. Co., 112 A.D.3d 794, 795, 977 N.Y.S.2d 321, 323 (2d Dept. 2013) (quoting Bombard v Amica Mut. Ins. Co., 11 A.D.3d 647, 648, 783 N.Y.S.2d 85 (2d Dept. 2004)) (citations omitted); see also Spectrum Sys. Int'l Corp v. Chemical Bank, 78 N.Y.2d 371, 377-78, 575 N.Y.S.2d 809 (N.Y. 1991) ("an investigative report does not become privileged merely because it was sent to an attorney") (citations omitted). "The critical inquiry is whether the communication was . . . primarily a report[] of an investigation of [a] claim and therefore discoverable or primarily or predominantly of a legal character and therefore protected by the attorney-client privilege." Cimato v. State Farm Fire & Cas. Co., No. 16 Civ. 94A (SR), 2018 U.S. Dist. LEXIS 15929, at *6, 2018 WL 635918, at *2 (W.D.N.Y. Jan. 31, 2018) (quoting Melworm v. Encompass Indem. Co., 37 Misc. 3d 389, 393, 951 N.Y.S.2d 829 (S. Ct. Nassau Cty 2012), aff'd, 112 A.D.3d 794, 977 N.Y.S.2d 321 (2d Dept. 2013)) (internal quotation marks omitted).

The Court has reviewed the documents submitted in camera and finds that most documents were withheld appropriately with the exception of summary reports of examinations under oath of underlying claimants. See Privilege Log Nos. 7, 231-243, 407-410, 464-466, 469-474. These documents are reports of investigations of individual claims for verification and handling. For example, Privilege log no. 231 is a report of an examination under oath of a non-party in connection with her claim. In some of the documents there are scattered references to 21st Century Pharmacy which the Court assumes is the reason for the report's inclusion in the Multi-Claim Investigation File. The primary purpose of these documents relates to verification of the particular insured's claim, and specifically, recounting facts elicited during the EUO in a condensed format. These reports should not be withheld in their entirety and must be provided to Moving Defendants. Where the content of the reports provides attorney opinions,

6

recommendations or impressions that are primarily of a legal character – not merely recitations or summaries of the testimony elicited under oath – they may be redacted on the grounds of attorney-client privilege.

The "retainer agreement" withheld as Privilege Log Nos. 101 and 305 under attorney-client privilege must be provided to Defendants. It is a series of guidelines to which State Farm expects its attorneys to adhere. There is no substantive legal advice provided or sought therein.

**B. Moving Defendants' Motion for Plaintiffs' Counsel and Katten's Disqualification**

Moving Defendants seek to disqualify Plaintiffs' individual counsel and the firm as a whole from representing Plaintiffs in this matter under the theory that Katten's current representation of Plaintiffs violates the Witness-Advocate Rule, i.e., Rule 3.7 of the New York Rules of Professional Conduct. ECF No. 128, generally. For the reasons set forth below, this motion is denied.

Rule 3.7(a) provides that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact . . . ." N.Y.R. Prof'l Conduct § 3.7(a). Rule 3.7(b) pertains to imputation and is therefore broader: "a lawyer may not act as an advocate before a tribunal in a matter if . . . another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." N.Y.R. Prof'l Conduct § 3.7(b).

As Moving Defendants concede, "[m]otions to disqualify are generally not favored. They are often tactically motivated; they cause delay and add expense; they disrupt attorney-client relationships sometimes of long standing; in short, they tend to derail the efficient progress of litigation." Felix v. Balkin, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999) (internal citation omitted). Disqualification is appropriate only if the attorney's conduct "tends to 'taint the

underlying trial' by affecting his or her presentation of the case." Tradewinds Airlines, Inc. v. Soros, No. 08 Civ. 5901 (JFK), 2009 WL 1321695, at *4 (S.D.N.Y. May 12, 2009) (quoting Bd. of Ed. of City of N.Y. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).  The Second Circuit "has demanded a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel." Secured Worldwide, LLC v. Kinner, No. 15 Civ. 1761 (CM), 2015 WL 4111325, at *3 (S.D.N.Y. June 24, 2015); see Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009) ("'Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions' under the witness-advocate rule.") (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)).

"The movant 'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring to the witness-advocate's client is substantial.'" Allstate Ins. Co. v. A & F Med. P.C., No. 14 Civ. 6756 (JBW), 2017 U.S. Dist. LEXIS 82102, at *10 (E.D.N.Y. May 30, 2017) (quoting Murray, 583 F.3d at 179). "'Prejudice' in this context means testimony 'that is sufficiently adverse to the factual assertions or account of events offered on behalf of the client such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" Murray, 583 F.3d at 178 (quoting Lamborn, 873 F.2d at 531).  Critically however, "[d]isqualification is 'required only when it is likely that the testimony to be given by [counsel] is necessary.'" A & F. Med, P.C., 2017 U.S. Dist. LEXIS 82102 at *10 (quoting Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994)) (internal quotation marks & citation omitted; alteration by court in Purgess).

Moving Defendants argue that Plaintiffs' counsel participated in verification or investigation of the underlying claims, so their depositions are necessary to determine whether State Farm's reliance upon Defendants' representations was justifiable (and therefore sufficient

8

to support its fraud claims). ECF No. 128 p. 4. Notably, the factual predicate offered for this argument – that Katten attorneys participated in a significant manner in the verification or investigation of individual underlying claims – was unsupported by the Court's review of the documents withheld as privileged. Rather, that work appears to have been performed by other attorneys from other firms. See Privilege Log Nos. 7, 231-243, 407-410, 464-466, 469-474.

Putting that uncertain foundation aside, Moving Defendants have not carried their burden under either Rule 3.7(a) or Rule 3.7(b). First, Defendants' motion under Rule 3.7(a) is premature. See Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 282-283 (2d Cir. 2004) ("The advocate-witness rule [under 3.7(a)] applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness in that very proceeding.") (first emphasis added). Second, even presuming – without finding – that Defendants can demonstrate that Plaintiffs' counsel's testimony on the issue of reliance would be prejudicial, Defendants have not met their high burden of showing that Plaintiffs' attorneys are necessary witnesses. See Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC, No. 17 Civ. 4831 (WHP), 2017 U.S. Dist. LEXIS 187365, at *5 (S.D.N.Y. Nov. 13, 2017) ("For both subsections, the testimony given by counsel must be 'necessary.'") (citing Finkel v. Frattarelli Bros., 740 F. Supp. 2d 368, 374 (E.D.N.Y. 2010)). Rather, at this time, it seems likely that the non-privileged information sought by Defendants regarding the multi-claim investigation into their businesses and the verification or investigation of underlying individual claims could be obtained by deposing other State Farm witnesses, e.g., the internal non-attorney investigators handling the matter or other claims handlers. See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015) (noting that the "availability of other witnesses is essentially fatal to the 'necessity' prong of the disqualification inquiry") (collecting cases);

9

Ello v. Singh, No. 05 Civ. 9625 (KMK), 2006 U.S. Dist. LEXIS 55542, at *22-23 (S.D.N.Y. July 31, 2006) ("A lawyer's testimony is 'necessary,' '<u>only</u> if there are no other witnesses to the circumstances at issue.'") (emphasis in original) (quoting Cabble v. Rollieson, No. 04 Civ. 9413 (LTS) (FM), 2006 U.S. Dist. LEXIS 7385, at *13, 2006 WL 464078, at *5 (S.D.N.Y. Feb. 24, 2006) (citation & quotation omitted)); see also United States v. Tate & Lyle N. Am. Sugars, Inc., 184 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002) (attorney's testimony was unnecessary because the communications to which attorney would testify could be shown by other testimony or non-testimonial evidence). Moving Defendants' motion for disqualification under both 3.7(a) and (b) is denied.

### C. Moving Defendants Raise Concerns Over The Use Of New York's No-Fault System For Pre-Action Discovery

In connection with the motions at issue herein, Moving Defendants call the Court's attention to what appears to be Plaintiffs' use of the New York State No-Fault system for pre-action discovery in this matter. ECF No. 130 pp. 3-4. For the reasons discussed below, the Court agrees that this is an issue of concern, although it is not determinative of the present motions. Counsel should be prepared to discuss these issues with the Court during conferences.

One particular correspondence, privilege log no. 114 (and a duplicate at privilege log no. 335), is an email from Katten attorney Michael Rosensaft to Barbara Stolfe at State Farm recounting "some of the highlights" from Mr. Alshayev's examination under oath, sent in November 2016. This document and its duplicate were withheld under the attorney-client privilege and attorney work-product privileges, the grounds for which are described as "[e]mail forwarding legal advice of counsel and work product generated in anticipation of litigation." ECF No. 131-1 pp. 9, 25. Although the Court credits Plaintiffs' description of this document as

generated in anticipation of litigation, the examination under oath was conducted under the guise of claims verification, which does not authorize pre-action discovery.

New York's No-Fault automobile insurance system is "the product of a statutory and regulatory design by which a person involved in an automobile accident is able to receive prompt medical attention and treatment in the immediate aftermath of the accident. While the system is not perfect and instances of fraud have been found, there is Insurance Department oversight over the process and its basic aim--the creation of a simplified and non-adversarial system to provide basic benefits irrespective of fault--has been achieved." Rowe v. Wahnow, 26 Misc. 3d 8, 10, 891 N.Y.S.2d 584, 586 (1st Dept. 2009) (McKeon, P.J., dissenting). 11 NYCRR § 65-3.2 sets forth seven "[c]laim practice principles to be followed by all insurers[,]" specifically:

> (a) Have as your basic goal the prompt and fair payment to all automobile accident victims.
> (b) Assist the applicant in the processing of a claim. Do not treat the applicant as an adversary.
> (c) Do not demand verification of facts unless there are good reasons to do so. When verification of facts is necessary, it should be done as expeditiously as possible.
> (d) Hasten the processing of a claim through the use of a telephone whenever it is possible to do so.
> (e) Clearly inform the applicant of the insurer's position regarding any disputed matter.
> (f) Respond promptly, when a response is indicated, to all communications from insureds, applicants, attorneys and any other interested persons.
> (g) Every insurer shall distribute copies of this regulation to every person directly responsible to it for the handling and settlement of claims for first-party benefits, and every insurer shall satisfy itself that all such personnel are thoroughly conversant with this regulation.

11 NYCRR §§ 65-3.2(a)-(g). Even a cursory examination of these principles places proceedings under the No-Fault system on a far different footing than similar proceedings in adversarial litigation. If the former is used in the latter, it may yield unjust results.

Although certainly complex, this question of whether a party may be permitted to use the no-fault insurance claim verification process for pre-litigation discovery, and if not, what should

the consequences be, is not an issue of first impression. For example, in Dermatossian v. New York City Transit Authority, the Court of Appeals held that "the fact of payment [on a no-fault claim] cannot in any sense be taken as a concession that the claim is legitimate[,]" and therefore should not be admitted against the insurer. Dermatossian v. N.Y.C. Transit Auth., 67 N.Y.2d 219, 224, 501 N.Y.S.2d 784, 787 (N.Y. 1986). This was in part because "[i]nsurers are admonished not to 'treat the applicant as an adversary' and not to 'demand verification of facts unless there are good reasons to do so.' Consequently, benefits are paid with only limited opportunity to investigate a claim . . . and insurers are obliged to honor [the claim] promptly or suffer the statutory penalties." Id. The Court of Appeals further discussed the compelling policy reasons behind its holding that the proof that the benefits were paid should not have been admitted into evidence in the underlying case. Id. 224-25. "A rule permitting the use of such evidence against insureds would work against the primary purpose underlying the No-Fault Law . . . . by discouraging insurers from making prompt and voluntary payment of claims . . . . [A]n insurer would have to choose between two courses of action, both potentially harmful: either pay the no-fault claim and risk having . . . payment held against it later . . . or dispute the claim and subject itself to the arbitration process with attendant expense and delay and the risk of being bound by any adverse arbitral ruling . . . . " Id. 225-26.

A dissent in a case before the First Department confronted an issue closely aligned with the Court's concerns here. See Rowe, 891 N.Y.S.2d at 586, generally. In Rowe, the parties to the personal injury litigation had relied upon independent medical examination (IME) reports generated earlier in connection with the No-Fault system claims. Id. at 9-10. The majority relied on those same IME reports to find that the defendant had established that the plaintiff had not suffered a serious injury, reversed the lower court's decision and granted the defendant's motion

12

for summary judgment.  Id.  Judge Douglas McKeon dissented to express his concern "that the use of these reports, under such circumstances, violates public policy and the purpose and spirit of New York's No-Fault Law."  Id. at 11.  Judge McKeon first noted that the IME reports offered by the defendant were the only admissible evidence of the plaintiff's medical condition and were prepared for the purposes of determining whether the plaintiff "should continue to receive no-fault benefits."  Id.  As he observed, IMEs are used in several contexts in New York, but many are not intended to be part of a partisan or adversarial exercise.  Id.  Personal injury lawsuits may utilize IMEs as part of the adversarial process under NYCPLR § 3102(a), but the purpose of other IMEs is often "to elicit medical information to assist a third party in determining the extent of a person's disability or entitlement to medical care or benefits."  Id.  IMEs may be held, for example, in connection with worker's compensation benefits, to determine if an injured police officer may return to duty, or in connection with the No-Fault system.  Id. at 11-12.  "But how is [the non-adversarial mandate of the No-Fault system] achieved if an IME report, intended to be the product of a non-adversarial process, is used, as here for adversarial purposes?"  Id. at 12.  Because the No-Fault system is designed as a non-adversarial process, it does not have the same inherent protections for the participants as adversarial litigation.  "Unlike an IME conducted as part of discovery in ongoing litigation, under 11 NYCRR 65-1.1, an insurer may request an IME 'as often as the Company may reasonably require it.'"  Id.  In Rowe, the

> . . . plaintiff was examined on three occasions, within six months, by [the doctor], who issued a separate report for each examination.  This is understandable if the purpose of frequent medical examinations is to monitor issues related to a claimant's recovery and need for future treatment, but appears fundamentally unfair when one of the generated reports is used to the detriment of the claimant in an unrelated lawsuit.  The problem is obvious: by using [the IME report] as the supporting medical affidavit in [defendant's] summary judgment motion, it can be argued that [he] got more than one bite at the apple; he got three.  Multiple

13

> examinations and reports generated for one purpose appear to have been improperly used for another.

Id. at 13. This may not be an isolated practice. See, e.g., State Farm Mut. Auto. Insur. Co. v. Jules Parisien, M.D., 18 Civ. 289 (ILG) (ST), Complaint at ECF No. 1-29 ¶ 8 (affidavit alleges State Farm requested "a variety of irrelevant corporate documents as well as [affiant's] personal appearance at an EUO in bad faith"); State Farm Mutual Auto. Insur. Co. v. A to Z Medical Care P.C., 17 Civ. 4443 (RJD) (RLM), Complaint at ECF No. 1 ¶ 48 (citing multiple EUOs as exhibits to the complaint).

The Court's review of the documents in this action raises similar concerns. Under the No-Fault system, Mr. Alishayev's appearance at one or more requested examinations under oath was a condition precedent to payment of the claims for which State Farm claimed it required verification. See IDS Prop. Cas. Ins. Co. v. Stracar Med. Servs., P.C., 116 A.D.3d 1005, 1007, 985 N.Y.S.2d 116, 118 (2d Dept. 2014) ("It is well established that the failure to comply with the standard policy provision requiring disclosure by way of submission to an examination under oath, as often as may be reasonably required," as part of the No-Fault system may preclude recovery of the policy proceeds.) (quoting Bulzomi v. New York Cent. Mut. Fire Ins. Co., 92 A.D.2d 878, 878, 459 N.Y.S.2d 861, 862 (2d Dept. 1983). Thus, State Farm was able to take multiple bites at the same apple, while Mr. Alishayev had additional financial reasons to comply beyond those at issue in litigation – his livelihood, to some degree, was at stake – and that may have changed how he responded to questioning or the process itself. There are obvious tensions between State Farm's assertion that Mr. Alishayev's examination under oath, requested in the guise of claims verification, was in anticipation of litigation, and State Farm's obligations under the No-Fault law not to treat the applicant (presumably Mr. Alishayev as assignee of the

claimant's benefits) as an adversary and to "[c]learly inform the applicant of the insurer's position regarding any disputed matter." 11 NYCRR §§ 65-3.2 (b), (e).

While the tensions and conflicts that may arise from the use of No-Fault proceedings or evidence in subsequent adversarial litigation are apparent, solutions to these issues are not. In Rowe, Judge McKeon would have precluded the use of the IMEs. See Rowe, 891 N.Y.S.2d at 586. This action stands on different footing as the parties are not litigating the merits of a few individual claims, rather Plaintiffs contend Defendants are, in sum and substance, engaging in widespread fraud under the No-Fault system. In light of the tensions discussed above, the Court wishes to discuss these matters further with the parties. Some of the Court's questions are: Is New York's Insurance Department not best positioned to conduct these investigations? Were notifications or complaints filed? What should the remedy be, if any, if State Farm used examinations under oath within the No-Fault system to gain unauthorized pre-action discovery for use in litigation? At this time, the Court does not find that Plaintiffs waived attorney-client privilege such that the documents should be produced, but it raises the question as to whether an alternative sanction is appropriate. The parties should be prepared to discuss these topics with the Court.

## III. CONCLUSION

Accordingly, the Court grants in part and denies in part Moving Defendants' motion to compel at ECF Nos. 130-131, and denies Moving Defendants' motion to disqualify counsel at ECF Nos. 128-129.

Dated: Brooklyn, New York
February 12, 2020

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge